NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JUAN RAMON GONZALEZ-AGUAYO, *Appellant.*

No. 1 CA-CR 18-0339
FILED 3-21-2019

Appeal from the Superior Court in Maricopa County
No. CR2016-150907-001
The Honorable Richard L. Nothwehr, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Heath Law Firm PLLC, Mesa
By Mark Heath
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Jennifer B. Campbell joined.

H O W E, Judge:

¶1        This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for Juan Ramon Gonzalez-Aguayo has advised this Court that counsel found no arguable questions of law and asks us to search the record for fundamental error. Gonzalez-Aguayo was convicted of aggravated assault, a class 3 dangerous felony. Gonzalez-Aguayo was given an opportunity to file a supplemental brief in propria persona; he has not done so. After reviewing the record, we affirm Gonzalez-Aguayo's conviction and sentence.

**FACTS AND PROCEDURAL HISTORY**

¶2        We view the facts in the light most favorable to sustaining the judgment and resolve all reasonable inferences against Gonzalez-Aguayo. *See State v. Fontes*, 195 Ariz. 229, 230 ¶ 2 (App. 1998). One evening in October 2016, R.C.'s mother asked him to go to a grocery store. As R.C. walked to his car, he saw two men approaching him, including his neighbor Gonzalez-Aguayo. Gonzalez-Aguayo started to yell at R.C. and pulled out a black handgun. Gonzalez-Aguayo racked the handgun, pointed the handgun at R.C., and threatened to kill R.C.

¶3        Because of the commotion, people started to come out of their homes. As a result, Gonzalez-Aguayo handed the handgun to his friend, who placed the handgun underneath his waistband. Gonzalez-Aguayo and his friend then walked back to Gonzalez-Aguayo's house. On their way back, the friend placed the handgun behind a fence at the house.

¶4        Phoenix Police Department Officer Andrew Crotty and his partner Lorraine Fernandez responded to the area after receiving a call about a fight and that a male had a handgun. After learning that the handgun had been placed by the fence, Officer Crotty searched the fence and adjacent areas. He did not find the handgun, however. The officers then arrested Gonzalez-Aguayo.

¶5           The State charged Gonzalez-Aguayo with one count of aggravated assault, a class 3 dangerous felony. A settlement conference was held in February 2018, but the parties did not reach an agreement. Because the record was not clear if the advisement at the settlement conference was accurate, the State extended an offer to Gonzalez-Aguayo before trial, which he rejected. Also, the State moved before trial to amend the indictment to include "BB gun" in addition to "handgun." The State argued that in an interview with Officer Crotty, Gonzalez-Aguayo initially denied using a handgun, but he later admitted to having a BB gun but said he never pointed it at R.C. Believing that Gonzalez-Aguayo would attempt to introduce these self-serving hearsay statements without testifying, the State moved to preclude them. The court did not rule on the requested amendment, but it did grant the State's request to preclude self-serving statements in the State's case-in-chief.

¶6           At trial, R.C. testified that Gonzalez-Aguayo had approached him, racked a handgun, pointed the handgun at him, and threatened to kill him. He also testified that he was scared because he thought his life was in danger. Further, R.C. stated that he believed the handgun was "real" because he was familiar with firearms; he had taken a course at a shooting range that required using a variety of guns, including handguns, shotguns, and rifles. R.C.'s friend E.B. testified that he followed R.C. out of the house and saw Gonzalez-Aguayo rack the handgun and point it at R.C. He then testified that he called another friend, J.B., to come outside at that point. J.B. testified that as he exited the house, he saw Gonzalez-Aguayo give the handgun to Gonzalez-Aguayo's friend. Both officers testified that R.C. appeared upset and was shaking when they interviewed him. The State did not present any evidence regarding Gonzalez-Aguayo's self-serving statements, and Gonzalez-Aguayo declined to present any evidence at trial. The jury found Gonzalez-Aguayo guilty of aggravated assault. The jury also found that the offense was "dangerous" and that R.C. suffered emotional harm, which were aggravating factors.

¶7           The trial court conducted the sentencing hearing in compliance with Gonzalez-Aguayo's constitutional rights and Arizona Rule of Criminal Procedure 26. The court noted that Gonzalez-Aguayo's limited criminal history and age were mitigating factors. The court sentenced Gonzalez-Aguayo to a minimum five years' imprisonment and awarded him with 76 days of presentence incarceration credit.

## DISCUSSION

**¶8**        We review Gonzalez-Aguayo's convictions and sentences for fundamental error. *See State v. Flores*, 227 Ariz. 509, 512 ¶ 12 (App. 2011). Counsel for Gonzalez-Aguayo has advised this Court that after a diligent search of the entire record, counsel has found no arguable question of law. We have read and considered counsel's brief and fully reviewed the record for reversible error, *see Leon*, 104 Ariz. at 300, and find none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, counsel represented Gonzalez-Aguayo at all stages of the proceedings, and the sentence imposed was within the statutory guidelines. We decline to order briefing and affirm Gonzalez-Aguayo's conviction and sentence.

**¶9**        Upon the filing of this decision, defense counsel shall inform Gonzalez-Aguayo of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Gonzalez-Aguayo shall have 30 days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review.

## CONCLUSION

**¶10**        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA